PAUL RICHMOND WSBA 32036
4616 26th Ave. NE, #449
Seattle, WA, 98105
Phone and Fax (206) 526 0565

LAWRENCE A. HILDES WSBA 35035
P.O. Box 5405
Bellingham, WA 98227
Ph: (360) 715-9788
Fax. (360) 714-1791

____ FILED   ____ ENTERED
____ LODGED  ____ RECEIVED

MAR 22 2005   ES

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                DEPUTY

5/155

851803

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| Nicholas T. Acorn, Jeffrey Acorn<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF SEATTLE, a Municipal Corporation, Lieutenant Wilske, SEATTLE POLICE OFFICERS JOHN and JANE DOE 1 - 100, their spouses, and the marital community composed thereof,<br><br>Defendants. | C05-0460 JCC<br>NO.<br><br>COMPLAINT FOR DAMAGES<br><br><br>05-CV-00460-CMP |

COME NOW the Plaintiffs and for cause of action against the Defendants allege as follows:

### I. JURISDICTION AND VENUE

1. This court has jurisdiction over the subject matter of this action pursuant to Title 28, United States Code Sections 1331, 1332, 1343, and 1367, and venue is properly set in the Western District Federal Court pursuant to 28 U.S.C. 1391.

2. The claims upon which this suit is based occurred in this judicial district.

Acorn v. City of Seattle                                                    1

3. Plaintiffs are informed and believe, and on that basis allege, that each of the named Defendants reside in this judicial district,

1.2  Plaintiffs Nicholas and Jeffrey Acorn filed a claim for damages with the City of Seattle on October 13, 2003.

1.3  This Court has jurisdiction over this cause and venue is proper.

## II. PARTIES

2.1  Nicholas Acorn and Jeffrey Acorn at all times material hereto were citizens of the United States and the State of Washington and resided in King County, Washington. Jeffrey Acorn is the father and legal guardian of Nicholas Acorn.

2.2  Defendants Seattle Police Lieutenant Wilske, Seattle Police Officers John and Jane Doe 1 - 100 are believed to reside in King County, Washington. Plaintiffs do not know if Defendants Seattle Police Lieutenant Wilske, Seattle Police Officers John and Jane Doe 1 - 100 are married or not, and if married, do not know their spouse's names but allege that if they are married, this constitutes a marital community under the laws of the State of Washington. Each of the acts complained of were done for and on behalf of the community as well as for and on behalf of the individuals.

2.3  Defendant City of Seattle, a Municipal Corporation, is a political subdivision of the State of Washington with capacity to sue and be sued in its own name for the acts and omissions of its agents and employees.

2.4  At all times material hereto Defendants Seattle Police Lieutenant Wilske, Seattle Police Officers John and Jane Doe 1 - 100 were fully appointed and acting officers of the police department of Defendant City of Seattle and were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Washington and/or the City of Seattle.

## III. FACTUAL ALLEGATIONS

3.1  On November March 22, 2003, Jeffrey Acorn brought his son Nicholas Acorn to a demonstration by the Federal Building located at or about 700 2nd Avenue in Seattle Washington. The demonstration was organized in opposition to the recent invasion of Iraq by the United States. The rally

had been organized by the local chapter of the Not In Our Name (NION) Coalition, a group which had sponsored numerous large rallies around Seattle in the year leading up to this invasion. All of these rallies had been peaceful. Rallies with tens of thousands of people put together by these organizers had been successfully policed by token forces of police in soft uniforms without incident.

3.2 The Peace Rally and Peace March on Saturday March 22 was much smaller than the earlier ones. This was in large part due to the heavy handed treatment of demonstrators at recent Marches and Demonstrations for Peace. Marches and Demonstrations for Peace held during the many months prior to the invasion of Iraq had been characterized by a willingness of the demonstrators and police to work together. In these many prior Peace Marches and Peace Demonstrations, Police wore standard duty soft uniforms, displayed no weapons, and sent only a token presence. Organizers of these Peace Marches communicated with the police. There were no known arrests, or incidents that came from any of these Peace Marches and Peace Demonstrations. These Peace Marches and Peace Demonstrations involved as many as 100,000 people at a time.

3.3 Immediately following the invasion of Iraq in March 2003, Seattle Police, and those agencies under their command had responded with an inexplicable and unilateral show of force. Their numbers became many times larger. The soft uniforms were largely replaced by full body armor. Less lethal weapons were prevalent among the officers. Some officers even displayed military style rifles, including M-16 variants.

3.4 The actions of these officers of the Seattle Police Department and other agencies under their command became much more aggressive as well. There were numerous accounts of peaceful protesters being, shoved, rough handled and arrested for no reason in the Peace Demonstrations and Peace Marches immediately following the U.S. invasion of Iraq in March 2003.

3.5 Jeffrey and Nicholas Acorn had attended at least five peaceful demonstrations together. Neither had been involved in, or even accused of any criminal action at any of these Peace Marches or Peace

Demonstrations.

3.6 There were a few hundred peace demonstrators around the Federal Building on March 22, 2003. There were almost as many police officers as there were peace demonstrators. In addition to the Seattle Police Department, officers from the King County Sheriff's Office, some Federal Agencies and others were observed there as well.

3.7 Because of the prevalence of less lethal weaponry, and because the Seattle Police had demonstrated a propensity to use these liberally during some past demonstrations, Nicholas accepted a bandana with vinegar. He immediately caught the attention of what seems to be have been an undercover police officer. This individual began asking Nicholas what he was planning to do. This individual described that he was a retired officer with the Port Authority.

3.8 The Demonstrators left the area behind the Federal Building, attempting to move West to First Avenue and then South down First Avenue.

3.9 The police moved immediately to limit the demonstrators to the sidewalk. From there the police began forming lines around the demonstrators and separating them into smaller groups. The language of many of the officers was abusive. Many of the officers used gratuitous force, shoving demonstrators. There seemed an intent by many of the officers to incite the crowd. Those injured by the police included a dog on a leash and an elderly World War II Veteran. Some officers pointed shotguns and other presumably less lethal devices at the crowd. The police detained the crowd in this manner for a considerable period of time.

3.10 Nicholas was standing behind Jeff when he was grabbed by an officer in riot gear. The officer came through street through police line and grabbed Nicholas by the arm. The undercover officer then forced Nicholas away from the other peace demonstrators and towards a van held by the police.

3.11 Jeff Acorn saw the police grab Nicholas and immediately tried to communicate to the police. He said, "they've taken my son, he hasn't done anything." He was stopped by a line of riot police in full body armor. Most of them had no identification. Jeff asked to talk to the

    commander but was never given the opportunity.

3.12 Fifteen year old Nicholas went numb with fear. He couldn't believe he was being arrested. The handcuffs were tight, cutting into his wrists. He still needed to relieve himself.

3.13 Nicholas was photographed in front of the crowd then taken inside the police van. The van then left the area.

3.14 Still none of the officers told Jeff what was happening to Nicholas. Jeff began to feel his heart race. He experienced feelings of helplessness about what was happening to his son. He didn't know what the police would do next.

3.15 The van drove Nicholas into the precinct garage.

3.16 Nicholas was taken from the van by two police officers. He was told to follow a green line. As he was being led in handcuffs he could only think about the movie <u>Green Mile</u>, a movie about an execution.

3.17 Nicholas was placed in a cell by himself. His handcuffs were not loosened. He was not allowed to relieve himself. He was not allowed to make a phone call. He had no idea what would come next.

3.18 Only after some time did Jeff learn Nicholas was held at West Precinct. It took him some time before he was able to get through the barricades of armored police. Nicholas had been in custody for over an hour at this point. - correct

3.19 At West Precinct, Jeff and Nicholas were threatened that if Nicholas returned to the protest, he'd be arrested and held over night.

3.20 After sometime Nicholas was released to Jeff's custody. Nicholas first words were that he didn't know handcuffs could hurt this much.

3.21 Both Jeff and Nicholas Acorn have since suffered as a result of this. Jeff Acorn was traumatized. It impacted his sleep and his health. He sought support through his church.

3.22 Nicholas has not been able to bring himself to a protest since. He notices a difference in how he thinks. He doesn't think he can be safe. If the police decide he's done something wrong and that they're going to arrest him, he doesn't believe anything he does could ever make a difference. He found

his heart racing when he saw police in public places.

3.23  By the actions described above, Defendants Seattle Police Officers John and Jane Doe 1 - 100 deprived each of the Plaintiffs of the following clearly established and well settled constitutional rights:

a. Freedom from the use of excessive and unreasonable force;

b. Freedom from the deprivation of liberty without due process of law; and

c. Freedom from summary punishment.

d. Freedom to peaceably assemble

e. Freedom to Petition the Government for Redress of Grievances

f. Freedom of Speech and Expression

3.24 The Defendants Seattle Police Officers John and Jane Doe 1 - 100 subjected Plaintiffs to these deprivations of their rights either intentionally or maliciously, or by acting with a reckless disregard for whether Plaintiffs' rights would be violated by their actions.

3.25  As a direct and proximate results of the acts and omissions of the Defendants, Plaintiffs suffered physical injuries, were forced to endure pain and mental suffering, were deprived of their physical liberty and were forced to incur legal expenses, emotional distress, humiliation, outrage, damage to their reputation, loss of employment and wage earning capacities, all past and future, and other injures and damages to be proven at trial.

## IV.  FIRST CAUSE OF ACTION: FALSE ARREST/FALSE IMPRISONMENT

4.1 Plaintiffs hereby incorporate and re-allege as if fully set forth herein each and every allegation of paragraphs 3.1 through 3.25.

4.2 Defendants arrested and imprisoned Plaintiff Nicholas Acorn without probable cause.

4.3 Defendant City of Seattle is liable for the actions of the individual Defendants under the doctrine of respondeat superior.

4.4 As a direct, proximate and foreseeable result of wrongful actions described herein above, Plaintiffs suffered personal injuries.

## V   SECOND CAUSE OF ACTION:
## NEGLIGENT AND INTENTIONAL INFLICTION
## OF EMOTIONAL DISTRESS

5.1 Plaintiffs hereby incorporate and re-allege as if fully set forth herein each and every allegation of paragraphs 1.0 through 4.4.

5.2 Defendants are liable to Plaintiffs Nicholas Acorn and Jeff Acorn for the torts of intentional infliction of emotional distress, and negligent infliction of emotional distress.

5.3 Defendant City of Seattle is liable for the actions of the individual Defendants under the doctrine of respondeat superior.

5.4 As a direct, proximate and foreseeable result of wrongful actions described herein above, Plaintiffs suffered personal injuries.

## 6   THIRD CAUSE OF ACTION:
## VIOLATION OF THE FOURTH AMENDMENT PROHIBITION AGAINST
## UNREASONABLE SEARCHES AND SEIZURES

6.1 Plaintiffs hereby incorporate and re-allege as if fully set forth herein each and every allegation of paragraphs 1.0 through 5.4.

6.2 The acts and omissions of Defendants herein were performed under color of state law, custom or usage.

6.3 Nicholas Acorn was seized, for purposes of the Fourth Amendment to the United States Constitution, by the acts and omissions of Defendants set forth herein.

6.4 Nicholas Acorn had a federally protected right, under the Fourth Amendment, not to be subjected to an unreasonable search and seizure.

6.5 The acts and omissions of Defendants herein proximately caused the deprivation of the Fourth Amendment rights of Nicholas Acorn.

6.6 As a proximate result of the acts and omissions of Defendants and deprivation of Plaintiffs' Fourth Amendment rights, Plaintiffs suffered personal injuries as set forth herein above.

## VII. FOURTH CAUSE OF ACTION:
## ARREST WITHOUT PROBABLE CAUSE IN VIOLATION OF THE FOURTH
## AMENDMENT

7.1 Plaintiffs hereby incorporate and re-allege as if fully set forth herein each and every allegation of paragraphs 1.0 through 6.6.

7.2 The acts and omissions of Defendants herein were performed under color of state law, custom or usage.

7.3 Nicholas Acorn was arrested, for purposes of the Fourth Amendment, when they were seized, handcuffed and taken into custody.

7.4 Nicholas Acorn had a federally protected right, under the Fourth Amendment, not to be arrested by Defendants without probable cause.

7.5 The defendants lacked probable cause to arrest Nicholas Acorn.

7.6 The acts and omissions of Defendants herein, and each of them, proximately caused the deprivation of Nicholas Acorn's Fourth Amendment rights.

7.7 As a proximate result of the acts and omissions of Defendants and deprivation of their Fourth Amendment rights, Plaintiff Nicholas Acorn suffered personal injuries as set forth herein above.

## VIII.  FIFTH CAUSE OF ACTION:
## VIOLATION OF THE FOURTEENTH AMENDMENT
## DUE PROCESS CLAUSE

8.1 Plaintiffs hereby incorporate and re-allege as if fully set forth herein each and every allegation of paragraphs 1.0 through 7.7.

8.2 The acts and omissions of Defendants herein were performed under color of state law, custom or usage.

8.3 Nicholas Acorn had federally protected rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to remain in a public place and the right to move from one place to another.

8.4 The acts and omissions of Defendants herein proximately caused the deprivation of Plaintiffs' Fourteenth Amendment rights.

8.5 As a proximate result of the acts and omissions of Defendants and

deprivation of their Fourteenth Amendment rights, Plaintiffs Nicholas Acorn suffered personal injuries as set forth herein above.

### IX. SIXTH CAUSE OF ACTION: VIOLATION OF THE FOURTEENTH AMENDMENT RIGHT TO PERSONAL SECURITY

9.1 Plaintiffs hereby incorporate and re-allege as if fully set forth herein each and every allegation of paragraphs 1.0 through 8.4.

9.2 The acts and omissions of Defendants herein were performed under color of state law, custom or usage.

9.3 Nicholas Acorn had a federally protected right, under the Fourteenth Amendment to the United States Constitution, to personal security.

9.4 The acts and omissions of Defendants herein proximately caused the deprivation of Plaintiffs' Fourteenth Amendment rights.

9.5 As a proximate result of the acts and omissions of Defendants and deprivation of their Fourteenth Amendment rights, Plaintiffs Nicholas Acorn suffered personal injuries as set forth herein above.

### 3.24 XI. NINTH CAUSE OF ACTION: VIOLATION OF THE FIRST AMENDMENT

10.1 Plaintiff hereby incorporates and re-alleges as if fully set forth herein each and every allegation of paragraphs 1.0 through 9.5.

10.2 The acts and omissions of Defendants herein were performed under color of state law, custom or usage.

10.3 Plaintiffs Jeff and Nicholas Acorn had federally protected rights, under the First Amendment to the United States Constitution, to Freedom of Assembly, Freedom of Speech and Expression, Freedom of Association, Freedom to Petition the Government for Redress of Grievances, and the Right not to be treated in a discriminatory manner for exercising those rights..

10.4 The acts and omissions of Defendants herein proximately caused the deprivation of Plaintiff' Fourteenth Amendment rights.

10.5 As a proximate result of the acts and omissions of Defendants and

deprivation of their Fourteenth Amendment rights, Plaintiff Noam Plaintiffs Jeff and Nicholas Acorn suffered personal injuries as set forth herein above.

## XI. EIGHTH CAUSE OF ACTION: MUNICIPAL LIABILITY OF THE CITY OF SEATTLE

11  a) Plaintiffs hereby incorporate and re-allege as if fully set forth herein each and every allegation of paragraphs 1.1 through 10.5.

b. At all times material to this complaint, Defendant City of Seattle, by and through its policymaking officials, had in effect certain explicit and de facto policies, practices and customs which were applied to the treatment of civilians in downtown Seattle during the Peaceful Protests of March 2003, including the arrest and detention of innocent civilians such as plaintiffs Nicholas Acorn.

c. For purposes of the incidents described herein, it was the policy, custom and practice of the City of Seattle to arrest and detain the plaintiffs without probable cause in violation of their Fourth and Fourteenth Amendment rights as set forth herein above.

d. It was further the policy of the City of Seattle, by and through policymaking officials to approve, acquiesce, condone and ratify the unreasonable seizure and detention of the plaintiffs in the incident described herein above, in violation of their Fourth and Fourteenth Amendment rights.

e. For purposes of liability for said policies, practices and/or customs, Gil Kerlikowske was the authorized policy-maker on police matters, and his decisions, explicit and de facto, were and are binding on Defendant City of Seattle.

f. The policy, practice and custom of approving, acquiescing in, condoning and/or ratifying the unreasonable seizure and detention of the plaintiffs in the incident described herein, in violation of their Fourth and Fourteenth

Amendment rights, was a deliberate choice by Defendant City of Seattle, by and through its chief of police and/or others.

g. These policies, practices and customs were maintained with deliberate, reckless and/or callous indifference to the constitutional rights of the plaintiffs as set forth herein above.

h. The above-described policies, practices and customs of Defendant City of Seattle proximately caused the deprivation of the Fourth and Fourteenth Amendment rights of the plaintiffs.

i. As a proximate result of the above-described policies, practices and customs of Defendant City of Seattle, and as a result of the deprivation of Plaintiffs' Fourth and Fourteenth Amendment rights, Plaintiffs suffered personal injuries as set forth herein above.

j. At all times material herein, Defendant City of Seattle had a duty, under the United States Constitution, to properly supervise Seattle police officers.

k. At all times material herein, Defendant City of Seattle had a duty, under the Fourth Amendment to the United States Constitution, to train Seattle police officers not to arrest and detain individuals without probable cause.

l. Defendants failed to properly supervise Defendants Seattle Police Officers John and Jane Doe 1 - 100.

m. Defendants failed to properly train Defendants Seattle Police Officers John and Jane Doe 1 - 100.

n. The above-described failures to supervise and to train were maintained with deliberate, reckless and/or callous indifference to the constitutional rights of Plaintiffs as set forth herein above.

o. The above-described failures by Defendants to properly supervise and to properly train Defendants Seattle Police Officers John and Jane Doe 1 - 100 proximately caused the deprivation of the constitutional rights of Plaintiffs as set forth herein above.

p. As a proximate result of the failure of Defendants to properly supervise and train, and as a result of the deprivation of Plaintiffs' constitutional rights, Plaintiffs suffered personal injuries as set forth herein above.

## XI. PUNITIVE DAMAGES ALLEGATIONS

12.1   Plaintiffs hereby incorporate and re-allege as if fully set forth herein each and every allegation of paragraphs 1.0 through 11.0.

12.2   The acts and omissions of Defendants herein were motivated by wrongful

12.3

12.4 motives or intent, or involved reckless or callous indifference to the constitutional rights of the Plaintiffs as set forth herein above.

12.5   Defendant City of Seattle should indemnify the individual defendants for any damages awarded against them at the trial of this action, including punitive damages.

12.6 Defendant City of Seattle is responsible for the fault of the individual defendants because the individual defendants were acting as agents or servants of the City of Seattle. Defendant City of Seattle is liable for all damages awarded against the individual defendants, including punitive damages.

12.7 Because Nicholas Acorn and Jeff Acorn are fault-free plaintiffs, Defendant City of Seattle is liable for all damages awarded, including punitive damages.

WHEREFORE, Plaintiffs pray for relief as follows:

1.   Compensatory Damages.   Defendants should be required to pay compensatory damages in an amount to be proven at trial.

2.   Punitive Damages.   Defendants should be required to pay punitive damages pursuant to 42 U.S.C. §1983 in an amount to be proven at trial.

3.   Attorney Fees.   Defendants should be required to pay Plaintiffs' reasonable attorney fees and costs pursuant to 42 U.S.C. §1988, as well as any and all other appropriate attorney fees and costs.

4.   Prejudgment interest.   Defendants should be required to pay prejudgment interest.

5.   Other Relief.   The Court should grant Plaintiffs such other relief as the Court deems just and equitable.

DATED this 22 day of March, 2005

_____
PAUL RICHMOND WSBA 32306

_____
LAWRENCE HILDES 35035
**Attorneys for Plaintiffs**

Best scanned image available.

# City of Seattle
## CLAIM FOR DAMAGES

NOTE: Type or Print Legibly. See instructions on back.

**CITY USE ONLY**
CLAIM NUMBER
DATE FILED

**CLAIMANT** NAME (FIRST - M. - LAST OR BUSINESS NAME): Nicholas T. Acorn
HOME PHONE:
HOME ADDRESS (NUMBER - STREET - CITY - STATE - ZIP): 13534 Meridian Ave N Seattle WA 98133
BUS. PHONE:

**ACCIDENT/LOSS** DATE: March 22, 2003  TIME:

**LOCATION/SITE** BE VERY SPECIFIC: STREETS, ADDRESSES, etc.
East side of 1st ave Between Spring and Madison Street

**DIAGRAM** Use if this will help you locate or describe what happened

**WHAT HAPPENED** DESCRIBE IN YOUR OWN WORDS HOW THIS LOSS OCCURRED AND WHY YOU BELIEVE THE CITY IS RESPONSIBLE.

A Police officer pulled me away from the sidewalk where my dog and I where staying into the middle of the street. He handcuffed, photographed, searched and put me in a police van. I was driven to a police station, searched, questioned and detained in a cell without bathroom privileges. After about an hour and fifteen minutes I was released and threatened not to return to the site or I would be held over night.

CITY DEPT?
CITY EMPLOYEE(S)?
CITY
VEHICLE NUMBER, LIC., etc.

**WAS YOUR PROPERTY** (home, auto, personal property) **DAMAGED?**
☐ YES   ☒ NO
IF SO, THEN FULLY DESCRIBE - SUCH AS AGE, MAKE, MODEL, CONDITION, VALUE, OR EXTENT OF DAMAGE.

FILED CITY OF SEATTLE CITY CLERK 03 OCT 13 PM 4:18

**WERE YOU INJURED?** ☐ YES ☒ NO  IF YES, THEN COMPLETE THE FOLLOWING:
DESCRIBE YOUR INJURY (IDENTIFY YOUR DOCTOR(S))

DATE OF BIRTH: 3/13/88   WAGE LOSS ☐ YES ☒ NO   IF YES, THEN RATE OF PAY
KIND OF WORK: Student   EMPLOYER: non

**AMOUNT CLAIMED** IF UNKNOWN, THEN ENTER "UNKNOWN"  $ UNKNOWN

**SIGNATURE OF CLAIMANT** (AND TITLE, IF A BUSINESS)
I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.
EXECUTED this 6 day of September, 20 03
at Seattle, King County, Washington.

Nick Acorn

CS 19.10 REV. 12/2002